*Margin note beside paragraph:* 7. Trade secrets: skill; injunction.

---

Levi Helm, Appellee, v. The Anchor Fire Insurance Company, Appellant.

Insurance: FALSE STATEMENTS: EVIDENCE OF INTENT. The question of whether an assured knowingly made false statements as to values, in an application for insurance or proofs of loss, is for

the jury; and he may testify directly that in making the statements he had no intent to mislead or deceive.

Exclusion of evidence: PREJUDICE. Prejudicial error cannot be predicated on the rejection of evidence which is subsequently received.

Evidence of value: QUALIFICATION OF WITNESS. A witness who has shown himself qualified may testify to the value of burned buildings and the cost of replacing them. As to the question of qualification see references in opinion.

Insurance: VALUE OF PROPERTY: KNOWLEDGE OF AGENT: FRAUD. Where it is shown that the agent of an insurance company examined the property at the time he took the application, his knowledge of its value thus acquired is imputed to the company, and it cannot be held as a matter of law to have been deceived or misled by any false representations of the assured as to value, but the issue of fraud should be submitted to the jury.

Evidence as to value: KNOWLEDGE OF JURORS. In determining the value of buildings destroyed by fire the jury may take into consideration its own judgment and general knowledge on the subject.

False Statements as to value. To constitute fraud in the valuation of property for the purpose of insurance which has no market value, but the same is matter of opinion, the representations must be shown to have been wilfully made and that they did in fact deceive.

Verdict: EXCESSIVE. A verdict which is clearly within the evidence will not be disturbed as excessive.

*Appeal from Cerro Gordo District Court.*— HON. CLIFFORD P. SMITH, Judge.

TUESDAY, NOVEMBER 13, 1906.

ACTION at law to recover upon two fire insurance policies issued by defendant to plaintiff. One of the policies covered the store building, furniture, and fixtures of plaintiff situated in Rock Falls, Cerro Gordo county, and the other the stock of merchandise contained in such store building. By the special findings and verdict, a recovery was awarded to plaintiff on both policies. A motion for new trial having

been made and submitted, the verdict was set aside as to the amount awarded on the merchandise policy, and a new trial granted.   The motion was overruled as to the amounts awarded on the building, furniture, and fixture policy, and judgment was entered accordingly.   Therefrom the defendant appeals.

*Edmund H. McVey* and *Blythe, Markley & Rule,* for appellant.

*Cliggitt, Rule & Keeler,* for appellee.

BISHOP, J.— The policy involved on this appeal dated in November, 1904, was written to insure plaintiff on his store building in the sum of $1,500, and on the furniture and fixtures therein contained in the sum of $300.   In the written application for the policy, the value of the building was stated to be $2,000, and the value of the furniture and fixtures was stated to be $450.   In December, 1904, the property covered by the policy was entirely consumed by fire.   In due time, plaintiff presented to defendant verified proof of loss, in which the values of the property were stated in the same amounts as in the original application.   In its answer the defendant admitted the issuance of the policies, and that the property covered thereby had been burned. As matters of defense thereto defendant pleaded a provision of the policy to the effect that it should not be liable thereunder beyond the actual cash value of the property at the time of fire, " and the loss or damage shall be ascertained or estimated according to said actual cash value, . . . and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."   A further provision was also pleaded to the effect that the entire policy should be void " if the insured has omitted, concealed, or misrepresented any fact or circumstance concerning this insurance or the subject

thereof; or, in case of any fraud or false swearing by the insured touching any matter relating to the insurance, or the subject thereof, whether before or after a loss." Fraud and false representation, by which defendant was deceived, is then pleaded in that while plaintiff, in his application and proofs of loss, stated and represented the value of the property insured to be the gross sum of $2,450, the actual cash value thereof was no more than the gross sum of $300. In answer to special interrogatories, and as related to the policy here involved, the jury found the value of the building to be $1,200, and the value of the furniture and fixtures to be $300, and the general verdict was for said sums with interest.

I. Errors occurring in connection with the taking of the evidence are contended for. The plaintiff was permitted to testify over the objections of defendant that, in making his application and his proofs of loss, he had **1. INSURANCE: false statements: evidence of intent.** no intention or purpose to deceive or mislead the defendant on the subject of values. Counsel for appellant invoke the rule to the effect that where a false statement is knowingly made, the intent to deceive is a conclusive inference to be drawn therefrom, consequently the party insured cannot be heard to testify that he had no intent to deceive. Giving recognition to the rule, still, it must be said there was no error. Whether plaintiff did or did not knowingly make a false statement as to values became an issue of fact to be submitted to the jury, and in such cases it is well settled that the party charged may testify directly to his intent or motive. *Frost v. Rosecrans,* 66 Iowa, 405; *Over v. Shiffling,* 102 Ind. 191 (26 N. E. 91); *Tasker v. Stanley,* 153 Mass. 148 (26 N. E. 417, 10 L. R. A. 468); *Gardon v. Woodward,* 44 Kan. 758 (25 Pac. 199, 21 Am. St. Rep. 310).

Plaintiff was asked on cross-examination if, at the time of his making application for the policy in suit, his property was not listed for taxation at a total valuation of $400.

An objection by plaintiff was sustained, and of this defendant complains.  If error there was, it must

**2. EXCLUSION OF EVIDENCE:** prejudice.

be held to be without prejudice, for, later on in the cross-examination, plaintiff, in answer to further questions, testified that the assessment valuation put upon his property by the assessor was the sum of $400.

Several witnesses were called by plaintiff to testify to the cost and value of the burned property, and to the cost of replacing the building.  Objection was made to the testimony of each for the reason that qualification

**3. EVIDENCE OF VALUE:** qualification of witnesses.

to speak in the way of an opinion was not shown.  Our reading satisfies us that each of the witnesses possessed qualification in a degree sufficient to warrant the admission of his evidence. The weight of it was for the jury.  *Sadler v. Bean,* 37 Iowa, 439; *Winklemans v. Railway,* 62 Iowa, 11; *Moore v. Railway,* 78 Wis. 120 (47 N. W. 273); *Bedell v. Railway,* 44 N. Y. 367 (4 Am. Rep. 688); *Gere v. Insurance Co.,* 67 Iowa, 272.

II. The fourth instruction given to the jury was addressed to the fraud issue.  Therein it was said that the burden of proving the falsity of the representations as to

**4. INSURANCE:** value of property: knowledge of agent: fraud.

value was upon defendant and, among other things, it was further said that a necessary element of the fraud was that defendant was deceived by the representations and relied upon them in issuing the policy.  This paragraph of the instruction then followed:  " The defendant would be bound by any knowledge which its agent, Drake, gained while soliciting insurance or taking application for it, even if he failed to communicate such knowledge to the other agents or officers of the defendant company.  Therefore, if he learned or knew the value of the property when he received plaintiff's application for insurance, the defendant must be deemed to have known the value thereof when it issued the policy, and in that case it could not be held to have been deceived by, or

to have- relied upon, the plaintiff's representations." The giving of the portion thus quoted is complained of as error, and the grounds of the complaint are that there was no evidence in the case to show that Drake had any knowledge, of the value of property in Rock Falls, and hence the inclusion of the paragraph was without warrant; further, that the fact that Drake saw plaintiff's property would not in any event justify the making by plaintiff of a false statement in his application.    We think there was no error.    The evidence made it appear that Drake resided in Mason City, several miles distant from Rock Falls; that he went to Rock Falls to solicit plaintiff's application for insurance, and while there he " looked around at the building some."    As he was not called as a witness by defendant —although he was shown to be at the time of the trial in Mason- City where the case was being tried — it must be presumed that he was a man of average intelligence, and, being engaged in the insurance business, that he had some knowledge at least of insurance values.    Having gone to Rock Falls and to the place of business of plaintiff for the purpose of soliciting insurance, it may fairly be presumed that as he " looked around at the building some " he acquired a general knowledge of the size, character, and condition of the property, and of its value, this sufficiently, at least, to prevent the imposition upon him of a $300 building at a cash valuation of $2,450.    And the knowledge acquired by him on the subject, would be the knowledge of the defendant.    Stone v. Insurance Co., 68 Iowa, 737; Siltz v. Insurance Co., 71 Iowa, 710; Scott v. Insurance Co., 98 Iowa, 67.

A reading of the evidence discloses that all the witnesses were agreed that the property insured had no market value in the stricter sense in which that term is used.    Of course, intrinsic value was there, but the amount could only be arrived at as a matter of judgment based upon estimates and opinions.    Conceding then, as we may for present pur-

poses, that the valuations as fixed by plaintiff were excessive, still, in determining whether or not this operated as a fraud upon the defendant, it was material to consider the knowledge of Drake, however much or slight, as bearing upon the element of deceit. Fairly construed, the instruction did not require the jury to determine whether or not Drake had gone so far as to place an estimate of value on the property. Nor was it necessary that he should have done so. If it was fairly apparent to him that the property was not worth $2,450, cash value, he was not deceived, and the defendant was not deceived. So considered, there was enough evidence to take the question to the jury. It is manifest from our reading that the paragraph of the instruction thus complained of could not be so construed as to convey the idea that from the mere fact that Drake saw the building at the time of the application plaintiff could justify any false statement made by him as to values.

III. Complaint is made of the ninth instruction wherein the jury was told: " You are not obliged to rely wholly on the opinions of the witnesses as to the value of the property in question. You may use, and be guided by, your own judgment, and general knowledge of such values in connection with the opinions of the witnesses." An instruction similar in its wording had express approval in *Hoyt v. Railway,* 117 Iowa, 297. But counsel for appellant points out that the Hoyt case was one to recover damages arising from the condemnation of a right of way across land, and they insist that a difference exists between such a case and the one presently being considered. The argument is that the cost and value of a building is a subject of expert evidence, and not a matter of common knowledge, whereas the value of land is not a question for expert evidence, and is a subject familiar to the ordinary juror. We fail to perceive on what grounds such a distinction can be planted. Neither the cost and value of a building nor the cost and value of

5. EVIDENCE OF VALUE: knowledge of jurors.

land is a subject for expert evidence in any strict sense of the term. As to either subject, any one having knowledge is competent to speak, and it can make no difference how the knowledge was obtained, whether from observation or practical experience. Every man is more or less familiar with buildings as he is with lands. If, in the one case or the other, he has given attention to the matters of cost and value, he is competent to speak on the subject; otherwise, he should not be heard. It is not material that such person may not be able to take pen and paper and figure out the precise cost of a building. Such goes only to the extent and accuracy of his knowledge, and hence to the weight to be attached to his estimate. Sadler v. Bean, *supra; Tubbs v. Garrison,* 68 Iowa, 44; *State v. Tennebom,* 92 Iowa, 551; *State v. Hathaway,* 100 Iowa, 225.

IV. On the fraud issue the jury returned special findings to the effect that, in his application for insurance and proofs of loss, plaintiff gave his honest judgment and opinion concerning the value of his property. Appellant contends that such findings, together with the general verdict, had no warrant in the evidence, and were the result of passion and prejudice. We think otherwise. It will be remembered that the charge of fraud is bottomed solely on the asserted over-valuation by plaintiff of his property. Without stopping to review the evidence, we may concede that, by the weight thereof, a case of over-valuation was made out. But this was not conclusive on the question of fraud: the over-valuation must have been willful, and made with an intent to deceive which was successful. *Bonham v. Insurnace Co.,* 25 Iowa, 328; *Behrens v. Insurance Co.,* 64 Iowa, 19; *Petty v. Insurance Co.,* 111 Iowa, 359. Does the evidence show conclusively that there was an over-valuation made with intent to deceive? That there is room for an argument, based on detached portions of the evidence, to the effect that plaintiff must have known his valuation was too high, may be con-

6. FALSE STATE-
MENTS AS TO
VALUE.

ceded.   But as against this we have the fact that the build-ing was situated in a small village, and, while having an intrinsic value — capable of being established only on resort to opinions — it had no market value.   There is then the. evidence of at least one witness who placed the cost of rebuilding at even higher figures than those named by plaintiff, and the evidence of several other witnesses who gave estimates of the value of the building as it stood before the fire, and of the cost of rebuilding, in sums not radically below.   To these may be added the significant fact that Drake, the agent of defendant, was on the ground, and examined the building at the time the application was written, and, presumably, was satisfied that plaintiff's valua-tion was a fair one.   Scott v. Insurance Co., *supra*.   Con-sidering all these matters, we think the conclusion might fairly be drawn that without any evil intent or purpose, but yielding to that partiality with which, as commonly known, most men estimate their own property, plaintiff went to the extreme in giving expression to his opinion of values. It follows that the question with which we started this branch of the inquiry must be answered in the negative.

V.   Finally, it is said that the verdict was excessive. It was clearly within the range of the evidence, and we are not disposed to interfere with the con-clusion reached by the jury, and sanctioned by the trial court.

7. VERDICT: ex-cessive.

Finding no error the judgment is *affirmed*.